**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| TIMOTHY WATKINS,<br>                                   *Plaintiff,*<br><br>v.<br><br>OFFICER ANTHONY FOX, OFFICER JUAN R.<br>DURAN, OFFICER DEVIN MILAZZO,<br>OFFICER CHARLES A. MONISTERE, OFFICER<br>JOHN DOE 4, OFFICER JOHN DOE 5, and<br>HAMMOND, LOUISIANA<br>                                   *Defendants.* | Civil Action No.:  2:21-CV-00856<br><br>Judge:  Hon. Jay C. Zainey<br><br>Magistrate Judge:  Hon. Michael B. North |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Timothy Watkins, by and through his undersigned counsel, and

for his Amended Complaint against Defendants Anthony Fox, Juan R. Duran, Devin Milazzo,

Charles A. Monistere, John Doe 4, John Doe 5, and Hammond, Louisiana, hereby states and

alleges as follows:

### NATURE OF ACTION

1.       On April 30, 2020, Plaintiff Timothy Watkins, a 45-year-old Black man, called

911 seeking police assistance to mediate a dispute over a broken windshield.  Instead, the police

arrested him on an unrelated shoplifting charge, handcuffed him, and severely injured him in the

process.  The arresting officer callously ignored Mr. Watkins' repeated pleas to handcuff him

from the front rather than the back to avoid exacerbating his chronic sciatica.  The force of the

behind-the-back handcuffing caused Mr. Watkins injuries that had an immediate and profound

effect on his life, leaving him in persistent debilitating pain and unable to engage in basic

household chores.  For these injuries, Mr. Watkins seeks money damages pursuant to 42 U.S.C.

1

§§ 1983 and 1988 and the Fourth Amendment to the United States Constitution, and under the laws of the State of Louisiana.

2.      Though the facts here may seem less extreme in comparison to some of the incidents of police brutality that dominate the airwaves, this case is no less a "knee on the neck of justice for Black Americans."[1]  Mr. Watkins was unarmed; fully cooperative at all times; arrested on a minor charge for a non-violent offense; and posed no threat or flight risk whatsoever.  He did absolutely nothing wrong—indeed, even the charges on which he was arrested were later unilaterally dismissed by the government.  Nonetheless, and for no justifiable reason, the arresting officer, Anthony Fox, intentionally handcuffed Mr. Watkins in a manner that he had specifically been told would cause unnecessary injury.  Officer Fox then kept Mr. Watkins handcuffed in that position—all the while forcing him to endure excruciating pain—for approximately 25 minutes.

3.      This conduct is repugnant to basic notions of human dignity, not to mention violative of Mr. Watkins' constitutional rights.  The banality of the police interaction here—gratuitous abuse during a routine handcuffing—only highlights the urgency of holding law enforcement accountable in this case.  There was no "tense, uncertain, and rapidly evolving situation" in which the officer had to make a "split-second judgment" about how much force to use.[2]  If law enforcement cannot resist using excessive force against a Black man when circumstances are safe and easy, the situation is virtually certain to turn tragic when the call is more difficult.  On the day Mr. Watkins was arrested, the law was clear that handcuffing a non-threatening, non-fleeing suspect from the back rather than the front constitutes excessive force

---

[1] Transcript of President Joe Biden addressing the nation on April 20, 2021, available at https://www.nytimes.com/2021/04/20/us/politics/biden-harris-chauvin-verdict-transcript.html.
[2] *Graham v. Connor*, 490 U.S. 386, 397 (1989).

when the arresting officer knows of a medical condition that could be aggravated by a behind-the-back handcuffing.  Yet Officer Fox did it anyway, as five other police officers stood by watching him violate Mr. Watkins' constitutional rights, doing nothing to stop him.

4.      The City of Hammond (the "City") which employs these officers should also be held accountable for its failure to train and supervise them with respect to a procedure as routine and frequent as the arrest of a person with a medical condition in non-exigent circumstances—a situation the City could fully expect its officers to encounter numerous times over the course of their careers.  Yet this failure is no wonder, given the City's track record of failing to discipline its officers when they use excessive force—including, in a haunting echo of the George Floyd murder, when an officer's "heavy leather tactical boot was on [a victim's] neck."[3]  Consistent with that pattern, the City could not be bothered to investigate Officer Fox's use of excessive force even after Mr. Watkins filed a formal complaint against him shortly after the incident.

5.      The unnecessary and abusive use of force in this case, the indifference with which the dignity and basic medical needs of a Black citizen were regarded,[4] and the City's deliberate failure to train, supervise and discipline such conduct reinforce a history of distrust between the police and the communities they are charged to serve and protect.[5]  This leaves citizens—

---

[3] *See, e.g.*, Chris Nakamoto, *Report says officers' actions were excessive force, borderline criminal*, August 11, 2020, https://www.wbrz.com/news/investigative-unit-report-says-officers-actions-were-excessive-force-borderline-criminal/; Hoang Tran, *Man alleges he was a victim of police brutality*, February 23, 2016, https://louisianarecord.com/stories/510668193-man-alleges-he-was-a-victim-of-police-brutality.

[4] *See, e.g.,* Elyse Wanshel, *Police Violence Against Black Disabled People Can't Be Ignored Anymore*, Huffington Post, Jul. 23, 2020, https://diversity.ucsd.edu/_files/21-Day%20Anti-Racism%20Challenge%20Files/Police%20Violence%20Against%20Black%20Disabled%20People%20Cant%20Be%20Ignored.pdf; Nick Winges-Yanez, *Black Disabled Americans Continue to Face Higher Rates of Police Violence*, The Hill, Aug. 17, 2020, https://thehill.com/opinion/civil-rights/512370-black-disabled-americans-continue-to-face-higher-rates-of-police.

[5] *See, e.g.,* Cassandra Chaney & Ray V. Robertson, *Racism and Police Brutality in America*, 17 J. Afr. Am. St. 480 (2013); Jocelyn R. Smith Lee, et al., *"That's My Number One Fear in Life. It's the Police": Examining Young Black Men's Exposures to Trauma and Loss Resulting From Police Violence and Police Killings*, 45 J. of Black Psychology 143 (2019); Marlese Durr, *What is the Difference between Slave Patrols and Modern Day Policing? Institutional Violence in a Community of Color*, 41 Critical Sociology 873 (2015); Rod K. Brunson, *"Police Don't*

especially people of color like Mr. Watkins—fearful of seeking assistance from the police, even

when they are the wronged party.[6]  Accountability is necessary to restore this trust.  Excessive

force is no less unconstitutional when it results from abusive handcuffing as opposed to the end

of a pistol or a knee to the neck.  A Black man in America should not have to die before justice

can be served.

6.      Officer Fox and the bystander officers who failed to intervene should be held

jointly and severally liable for using excessive force on Mr. Watkins.  So too should the City of

Hammond be held liable for failing to train, supervise and discipline its officers in their use of

excessive force.

## PARTIES

7.      Plaintiff Timothy Watkins is a person of majority domiciled in the State of

Louisiana within the Eastern District of Louisiana.

8.      Defendant Anthony Fox is a person of majority domiciled in the State of

Louisiana.  At all times pertinent and relevant to this action, Fox was employed as a police

officer by the City of Hammond, Louisiana and at all times mentioned herein acted in the course

and scope of his employment and under color of law.  Fox is sued in his individual capacity.

9.      Defendant Juan R. Duran is a person of majority domiciled in the State of

Louisiana.  At all times pertinent and relevant to this action, Duran was employed as a police

---

*Like Black People": African-American Young Men's Accumulated Police Experiences*, 6 Criminology & Public Policy 71 (2007).

[6] *See, e.g.,* Nikole Hannah-Jones, *Yes, Black America Fears the Police. Here's Why,* ProPublica, Mar. 4, 2015, https://www.propublica.org/article/yes-black-america-fears-the-police-heres-why; Rick Jervis, *Who are police protecting and serving? Law enforcement has history of violence against many minority groups,* USA Today, Jun. 13, 2020, https://www.usatoday.com/story/news/nation/2020/06/13/mistrust-police-minority-communities-hesitant-call-police-george-floyd/5347878002/; Dawn Butler, *Black people should not be scared to phone the police when they need help – but I was,* MetroUK, Aug. 8, 2020, https://metro.co.uk/2020/08/08/black-people-should-not-be-scared-phone-police-when-need-help-13098631/.

officer by the City of Hammond, Louisiana and at all times mentioned herein acted in the course and scope of his employment and under color of law.  Duran is sued in his individual capacity.

10.     Defendant Devin Milazzo is a person of majority domiciled in the State of Louisiana.  At all times pertinent and relevant to this action, Milazzo was employed as a police officer by the City of Hammond, Louisiana and at all times mentioned herein acted in the course and scope of his employment and under color of law.  Milazzo is sued in his individual capacity.

11.     Defendant Charles A. Monistere is a person of majority domiciled in the State of Louisiana.  At all times pertinent and relevant to this action, Monistere was employed as a police officer by the City of Hammond, Louisiana and at all times mentioned herein acted in the course and scope of his employment and under color of law.  Monistere is sued in his individual capacity.

12.     Defendants John Doe 4 and 5 (together with Duran, Milazzo, and Monistere, the "Bystander Officers") were, at all times pertinent and relevant to this action, employed as police officers by the City of Hammond, Louisiana and at all times herein mentioned acted in the course and scope of their employment and under color of law.  Defendant Bystander Officers are sued in their individual capacities.

13.     Defendant City of Hammond, Louisiana is a municipal corporation organized and existing under the laws of the State of Louisiana with the ability to sue and be sued within the State of Louisiana.  Defendant City at all times pertinent and relevant to this action employed Defendants Fox and Bystander Officers.  Defendant City was responsible for the hiring, training, supervision, discipline, administration, policies, customs, practices, operations, management and control of the Hammond Police Department and its officers, including Defendants Fox and the Bystander

Officers.  As such, Defendant City was the final policy maker for the Hammond Police Department in the areas of law enforcement and training, supervision, and discipline of police officers.

14.     Defendants are liable jointly, severally, and *in solido* for the intentional, excessive, and otherwise unconstitutional and tortious conduct set forth below.

## JURISDICTION AND VENUE

15.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because the controversy arises under the U.S. Constitution and 42 U.S.C. § 1983.  This Court has authority to award attorney's fees pursuant to 42 U.S.C. § 1988.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this complaint happened in this district.

## FACTUAL ALLEGATIONS

17.     Plaintiff Timothy Watkins is a resident of Amite, Louisiana.  For years prior to the incident described in this complaint, Mr. Watkins suffered from a medical condition known as sciatica.  Sciatica is a condition that involves nerve pain in the lower back, hips, and legs. Before the incident described in this complaint, Mr. Watkins managed his sciatica by taking prescription medication and avoiding activities that involve bending over or lifting heavy objects.

### *The Broken-Window Dispute Leading to Mr. Watkins' 911 Call*

18.     On April 30, 2020, Mr. Watkins was visiting his cousin in the City of Hammond. While Mr. Watkins' car was parked outside his cousin's house, a landscaper named Tobias Leikers was building a flower bed next door.  Mr. Leikers threw a piece of ceramic material into the rear windshield of Mr. Watkins's car, shattering it.

19.     Though Mr. Leikers initially indicated that he would be willing to pay for the windshield's repair, Mr. Watkins began to doubt that he would, in fact, follow through.

6

Mr. Leikers led Mr. Watkins to an ATM machine and then to Rende's Quick Stop, a gas station located at 306 West University Avenue, ostensibly so that Mr. Leikers could withdraw money to compensate Mr. Watkins for the windshield. But Mr. Leikers failed to give Mr. Watkins any money. Eventually, it became clear to Mr. Watkins that Mr. Leikers had no intention of paying for the broken windshield.

20.    At approximately 2:44 p.m., from the parking lot outside of Rende's Quick Stop, Mr. Watkins called the Hammond Police Department to report that Mr. Leikers had shattered the back windshield of his car and was refusing to pay for its repair.

### *Mr. Watkins' Arrest on an Unrelated Charge*

21.    Approximately thirteen minutes after Mr. Watkins dialed 911, six officers from the Hammond Police Department arrived at the scene. One of the officers, Defendant Anthony Fox, approached Mr. Watkins. The other five officers, the Bystander Officers, ignored Mr. Watkins and began to socialize with Mr. Leikers, who was also waiting at the parking lot. Despite the fact that the broken windshield was plainly visible, and that the officers' presence had been prompted by Mr. Watkins' 911 call for assistance, the officers (all white) did not question Mr. Leikers (also white) about the damage to Mr. Watkins' car. Instead, they engaged in friendly conversation with Mr. Leikers.

22.    As Defendant Fox approached, Mr. Watkins began to explain the reason for his 911 call—the dispute with Mr. Leikers over the broken windshield. Defendant Fox, who appeared not to be listening to Mr. Watkins's story, asked Mr. Watkins a completely unrelated question instead: whether he had stolen from a nearby Albertsons grocery store. Mr. Watkins responded to Defendant Fox that he had not stolen anything from Albertsons.

23.    Defendant Fox then showed Mr. Watkins a photo of him at Albertsons. In the photo, Mr. Watkins was wearing different clothing than what he was currently wearing at the

7

time.  Already distrustful of Defendant Fox's intentions, Mr. Watkins did not comment on the photo.

24.     Officer Fox then said to Mr. Watkins, "Put your hands behind your back, you're fucking going to jail."  Defendant Fox grabbed Mr. Watkins' arm and pushed him against his car.

### The Abusive and Unnecessary Handcuffing

25.     Having been asked to put his hands behind his back, Mr. Watkins immediately requested that Defendant Fox instead handcuff him with his hands in front of his body, explaining that he suffers from a severe medical condition, sciatica, and that he would be injured if handcuffed behind the back.  Defendant Fox, who was inches away from Mr. Watkins, clearly heard this explanation of this pre-existing medical condition and the potential for injury if Mr. Watkins were handcuffed behind the back.

26.     Defendant Fox deliberately chose to neither respond to Mr. Watkins' plea nor comply with his request.  Instead, Defendant Fox proceeded to handcuff Mr. Watkins with his hands behind his back.

27.     Defendant Fox had no justifiable reason to handcuff Mr. Watkins from the back rather than from the front.  Mr. Watkins did not pose any threat to anyone on the scene: he was unarmed and fully cooperative.  He made no attempt to evade or resist arrest.  Indeed, since he himself had made the initial call to 911 in order to seek the assistance of police, he had no reason to flee or fail to cooperate; his hope was that the police would assist him in resolving his dispute with Mr. Leikers.  And Defendant Fox was arresting him on a minor charge for a non-violent offense, theft under $1000, for allegedly stealing two bottles of tequila worth $77 from Albertsons (though he never informed Mr. Watkins of the charge at the time of his arrest).  In light of these conditions and Mr. Watkins' clear and unequivocal statement that handcuffing him

8

behind his back would cause him injury due to his underlying medical condition, it was a disproportional use of force for Defendant Fox to handcuff him from the back.

28.    Immediately upon being handcuffed behind the back, Mr. Watkins felt severe pain radiate through his back and legs.  This pain was caused by the twisted bodily position in which the behind-the-back handcuffing forced Mr. Watkins to stand, which irritated and put increased pressure on his sciatic nerve.[7]

29.    Defendant Bystander Officers were standing close enough to Mr. Watkins to be able to see and hear everything that was happening.  They witnessed Defendant Fox ignore Mr. Watkins' pleas and handcuff him behind his back, but they did not intervene to protect Mr. Watkins from Defendant Fox's abusive handcuffing.

30.    At no point during the arrest was Mr. Watkins informed of the charges against him or read his rights.

31.    After handcuffing and arresting Mr. Watkins, Defendant Fox directed Mr. Watkins to sit in his police car while he chatted with Defendant Bystander Officers. Because Mr. Watkins was handcuffed behind the back, he was forced to sit in a bent-over position in the car—a position he would normally avoid because it compresses and irritates the sciatic nerve.  This seated positioning caused him further excruciating pain in his back, legs, arms, ribs, and shoulders.  The pain was a direct and proximate result of his seated position and the behind-the-back handcuffing.  In severe pain, Mr. Watkins was forced to wait in the police car for roughly ten minutes before Defendant Fox finally got into the vehicle and drove to the police station.

---

[7] *See National Center for Biotechnology Information, "Sciatica",* Feb. 26, 2021 (describing sciatica as a "debilitating condition" that is "worsened with twisting" or "bending"), https://www.ncbi.nlm.nih.gov/books/NBK507908/; Becky Young and William Morrison, M.D., *Everything You Need to Know About Sciatica,* Healthline, Aug. 16, 2019, https://www.healthline.com/health/sciatica.

32.     While en route to the police station, Mr. Watkins received a phone call on his cell phone from Medicare.  He answered the call on speakerphone since the handcuffs prevented him from lifting the phone to his ear.  The call stated that his prescriptions for Percocet, Valium, and morphine were ready to be picked up.  Because the call was played on speakerphone, Defendant Fox, who was driving the car, overheard it.

33.     Apparently realizing that Mr. Watkins' condition was genuine, Defendant Fox apologized for the handcuffs, and told Mr. Watkins that he would remove them once they reached the police station.

34.     Nonetheless, after they arrived at the station, Mr. Watkins' handcuffs were not removed for another five to seven minutes.

35.     All told, including the time spent waiting for Defendant Fox to conclude his conversation and get into the vehicle, the drive to the station, and the delay in removing the handcuffs, Mr. Watkins was left in excruciating pain in a bent-over position with his hands cuffed behind his back for approximately 25 minutes.  This pain was completely unnecessary—it could have been avoided by simply handcuffing Mr. Watkins from the front as he had requested. At the very least, his pain could have been abated if the handcuffs had been removed or repositioned sooner.

36.     After the cuffs were removed, Mr. Watkins was held in custody at the police station for several hours while his arrest was being processed.  In a final affront to Mr. Watkins' dignity, Defendant Fox hurled a gratuitous insult his way at the station, referring to him as a "dumbass."

37.     After his arrest was processed, Mr. Watkins was released to a bail bondsman from whom he learned, for the first time that day, what he had been arrested for: theft of items under

$1,000.  According to the Hammond Police Department's report on the incident, Mr. Watkins'

charge was stealing two bottles of tequila, valued at $77.98, from Albertsons.  In March 2021,

that charge was unilaterally dropped by the government.

### *Mr. Watkins' Injuries Arising from the Handcuffing*

38.     The excessive force to which Mr. Watkins was subjected while he cooperated

with his arrest for charges that were ultimately dismissed caused him long-term physical,

psychological, and economic injuries.  These injuries—which still affect Mr. Watkins many

months after his arrest—were directly and proximately caused by Defendant Fox's use of

excessive force in handcuffing Mr. Watkins from behind the back rather than the front, even

though Defendant Fox was informed that doing so would cause Mr. Watkins injury due to his

underlying medical condition.

39.     For a week following his arrest, Mr. Watkins had purple bruises with the imprint

of handcuffs on his wrists.  Since his arrest, Mr. Watkins has suffered from dramatically

increased nerve pain from his sciatica.  This increased pain, itself injurious, has significantly

limited Mr. Watkins' capacity to undertake daily activities.  While before his arrest, he was able

to engage in day-to-day activities, he is now unable to engage in housework, such as doing

dishes and preparing meals.  As a result, Mr. Watkins has had to hire a housekeeper to perform

these activities for him, whom he pays at a rate of $100 a week—an expense that is entirely

attributable to the injury that resulted from the excessive force inflicted upon him by Defendant

Fox during his arrest.

40.     Additionally, Mr. Watkins has experienced mental anguish, humiliation,

emotional distress, loss of enjoyment of life, and other non-pecuniary losses since his arrest.  The

psychological impact of the abusive handcuffing he was subjected to led Mr. Watkins to resume

taking anti-depressant medication, which he had stopped taking several months prior to his arrest.

### *Mr. Watkins Files a Formal Complaint Against Officer Fox*

41.     On September 17, 2020, Mr. Watkins filed a formal complaint with the Hammond Police Department regarding Defendant Fox's use of excessive force against him.  In the complaint, he recounted the circumstances leading up to his arrest.  He specifically noted that he asked Defendant Fox to handcuff him from the front and "made him very much aware of my Server [sic] Medical Condition," but Defendant Fox "ignorantly chose to handcuff ME from the back" which "[s]uper aggravated" his "medical condition."  Mr. Watkins recommended that the Hammond Police Department terminate Defendant Fox for his conduct following an investigation.

42.     Mr. Watkins never received a response from the Hammond Police Department.

### *Defendant City of Hammond's Role in Causing Mr. Watkins' Injuries*

43.     The Hammond Police Department, which employed Defendant Fox and Defendant Bystander Officers, is a department within the Defendant City of Hammond. Defendant City of Hammond is also responsible for the conduct that resulted in Mr. Watkins' injuries.

44.     *First*, the Hammond Police Department, controlled by Defendant City, has a pattern of failing to discipline officers for using excessive force, amounting to a *de facto* custom.

45.     News reports indicate that this pattern is pervasive, and this police department has failed to discipline use of excessive force among its officers even in circumstances more egregious than those at issue here.  In 2015, Hammond police officers brutalized a man arrested on a mistaken warrant, with one officer placing a knee on his back, another placing his knee on

his face, and the last officer jumping on top of him.  All of them ignored his pleas to stop.[8]  Upon information and belief, the officers were never disciplined.  In 2017, Hammond police officers brutally punched, tased, and kicked a Black man in their custody.  Despite the fact that the former police chief found the case so disturbing that he turned it over to the FBI, the Hammond Police Department disciplined only one of several officers involved in the beating.  Notably, the Hammond Police Department declined to discipline the officer whose "heavy leather tactical boot was on [the victim's] neck."[9]  It even promoted one of the involved officers to the role of police chief only a year after the incident—further evidencing the Department's endorsement of its officers' pattern of using excessive force.  More recently, in January of 2021, a video surfaced of Hammond police officers brutally beating a Black man who was already restrained on the ground.  The video captured such egregious conduct that members of the Hammond City Council have voiced their concern.[10]  Upon information and belief, the City has failed to discipline the officers involved.

46.    These incidents are likely just the tip of the iceberg, since disciplinary records and excessive force complaints are often non-public.

47.    The Hammond Police Department permitted a culture of impunity to fester with respect to its officers' use of excessive force.  This *de facto* custom directly caused Mr. Watkins' injuries at the hands of Defendant Fox.  Given the dim prospect of facing any consequences for his actions, Defendant Fox proceeded to use excessive force against Mr. Watkins.  And he was

---

[8] Hoang Tran, *Man alleges he was a victim of police brutality*, February 23, 2016, https://louisianarecord.com/stories/510668193-man-alleges-he-was-a-victim-of-police-brutality.

[9] Chris Nakamoto, *Report says officers' actions were excessive force, borderline criminal*, August 11, 2020, https://www.wbrz.com/news/investigative-unit-report-says-officers-actions-were-excessive-force-borderline-criminal/.

[10] Paul Cobler, *A video shows Hammond Police hitting a suspect on the ground.  Some City Council members are alarmed*. The Advocate, April 4, 2021, available at https://www.theadvocate.com/baton_rouge/news/crime_police/article_6f7f682a-940c-11eb-99d6-6770a3237d5f.html.

right: the Department did nothing to address Mr. Watkins' complaint about Defendant Fox's use of excessive force against him.

48.     ***Second***, the Hammond Police Department completely failed to train and supervise its officers on how to comply with their clear constitutional duty not to use excessive force when they engage in routine handcuffing.

49.     The Hammond Police Department should have known to a high degree of certainty that its officers would be placed in recurring situations where they arrest, for a minor offense, a cooperative suspect who—as Mr. Watkins did here—makes it known that he suffers from a medical condition that will be exacerbated by behind-the-back handcuffing.  Conditions that may be aggravated by handcuffing behind the back are common, and are not limited to the severe form of sciatica that Mr. Watkins suffers from.  For example, high-risk pregnancies, shoulder injuries, and even certain unusual body types (such as extremely short arms) are all conditions known to trigger significant injury when a person is handcuffed behind the back— injury that could be avoided if an officer informed of the risk instead handcuffs the suspect from the front.

50.     Given the prevalence of such conditions, it can be expected that officers will frequently be faced with arresting a cooperative suspect on a minor charge in circumstances where the officer knows of a medical condition that would trigger injury if the suspect is handcuffed behind the back.  But the Hammond Police Department did not train its officers to address this most routine scenario.

51.     Similarly, the Hammond Police Department should have known to a high degree of certainty that its officers would lack the legal knowledge necessary to avoid the application of excessive force in that situation without training and supervision specific to the issue of

handcuffing otherwise-cooperative suspects with medical conditions.  The Hammond Police Department's failure to train and supervise its officers on this issue thus amounts to deliberate indifference of Mr. Watkins' Fourth Amendment right to be free from excessive force.

52.     Unlike other excessive-force fact patterns, in this circumstance, there was no "split-second judgment" or "tense, uncertain, and rapidly evolving situation"[11] that could justify deference to the officer's judgment on how much force was necessary in the situation.  Simply put, a fully cooperative suspect arrested for a minor non-violent offence does not need the heightened restraint of a behind-the-back handcuffing.  In this textbook situation, Defendant Fox should have been trained on how to arrest and handcuff Mr. Watkins without violating his constitutional rights.  In this case, such training would have called for Defendant Fox to handcuff Mr. Watkins from the front (not the back) after being informed of a medical condition that would be aggravated by behind-the-back handcuffing.  An injury such as that Mr. Watkins suffered here is the predictable result of a lack of training on proper handcuffing procedure.

53.     **Third**, upon information and belief, officers of the Hammond Police Department may also have a history of numerous complaints related to abusive handcuffing.  This pattern of violations would have made plainly obvious the need for training officers on how to avoid excessive force during this routine police procedure.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Excessive Force in violation of the Fourth Amendment
### (As to Defendants Fox and Bystander Officers)

54.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

55.     42 U.S.C. § 1983 provides that:

---

[11] *Graham v. Connor*, 490 U.S. at 397.

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

56.     Defendants Fox and Bystander Officers, jointly and severally, deprived Mr. Watkins of clearly established rights secured to him under the United States Constitution—specifically the Fourth Amendment rights to be free from unreasonable seizures and to be free from the use of excessive force against one's person.

57.     Defendant Fox's excessive use of force in handcuffing Mr. Watkins from the back rather than the front was unreasonable.  Defendant Fox was aware that Mr. Watkins suffered from a pre-existing medical condition that would cause him pain if he was handcuffed from the back rather than the front, because he heard Mr. Watkins specifically tell him that.  Despite this awareness, Defendant Fox nonetheless handcuffed Mr. Watkins from behind the back.  This application of force was disproportionate in the circumstances because Mr. Watkins was being arrested for a minor offense (*i.e.*, a $77 shoplifting charge); he posed no threat or danger to the arresting officer or anyone else; and was not resisting arrest or attempting to flee.

58.     Defendant Bystander Officers were present at the scene of the violation of Mr. Watkins' constitutional rights.  They witnessed the use of excessive force by Defendant Fox against Mr. Watkins.  Though they had a reasonable opportunity to intervene in order to prevent or mitigate injury to Mr. Watkins, they chose not to.

59.     Defendant Bystander Officers failed to take any action to prevent harm to Mr. Watkins, and thereby proximately caused excessive force to be inflicted upon Mr. Watkins that resulted in a constitutionally-actionable injury.  Defendant Bystander Officers are jointly and severally liable along with Defendant Fox for Mr. Watkins' injuries.

60.     Any reasonable police officer in the position of Defendant Fox or Defendant Bystander Officers would have known that the force being used against Mr. Watkins was unconstitutional.

61.     Any reasonable police officer in the position of Defendant Fox or Defendant Bystander Officers would have known that they had a duty to take reasonable measures to prevent harm to Mr. Watkins.

62.     Defendants' conduct resulted in physical injury to Mr. Watkins.  It severely aggravated his pre-existing medical condition, sciatica, and caused long-term nerve pain in his back and legs, preventing him from standing up for long periods of time.  As a result, he is no longer able to engage in normal household chores (such as doing the dishes), and must now rely on a hired housekeeper to complete this work.

63.     Defendants' conduct also resulted in psychological injury to Mr. Watkins.  Since his arrest, Mr. Watkins has experienced emotional and psychological injuries, including mental anguish, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses.  Due to these injuries, Mr. Watkins has begun taking Venlafaxine, an anti-depressant that he had stopped using several months before his arrest.

64.     Defendants' conduct was the moving force and the proximate and producing cause of the aforementioned injuries.

65.     Due to the injuries suffered by Mr. Watkins, he is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial.  As a further result of Defendants' unlawful conduct, Mr. Watkins has incurred special damages, including expenses related to the disability caused by his injuries.  He may continue to incur other expenses and other special damages, in amounts to be established at trial.

66.     Mr. Watkins is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

67.     In depriving Mr. Watkins of his rights under the United States Constitution, Defendant Fox and Bystander Officers acted under color of law in their respective capacities as Hammond police officers, and their actions and omissions were conducted within the scope of their respective official duties or employment.  This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – Failure to Train and Supervise**
**(As to Defendant City of Hammond)**

68.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

69.     The Hammond Police Department is a department within the City of Hammond, a named Defendant in this case.

70.     At all times relevant to this action, Defendant City had policymaking authority and otherwise controlled the training and supervisory practices of the Hammond Police Department.

71.     Defendant City has a policy, practice and custom of failing to train and supervise police officers with respect to a clear constitutional duty implicated in a recurrent situation that police officers are certain to face—*i.e.*, the routine handcuffing of arrestees who pose no threat or risk of flight and who, to the knowledge of the arresting officer, suffer from a medical condition that will be aggravated by handcuffing them from behind the back.

72.     Defendant City should have known that Hammond Police Department officers would be placed in such a recurrent situation.  Defendant City should have known that, in such a situation, its officers have a clear constitutional duty to avoid excessive force by handcuffing the

suspect from the front rather than the back.  Defendant City should have known that its officers would lack the legal knowledge necessary to avoid the application of excessive force in that situation without training and supervision, including on the issue of handcuffing otherwise-cooperative suspects with medical conditions made known to the arresting officer.

73.     Upon information and belief, officers employed by Defendant City have a history of numerous complaints related to abusive handcuffing.  This pattern of violations made plainly obvious the need for training and supervising officers on how to avoid using excessive force during routine handcuffing.

74.     Through the adoption of this policy, practice and custom of failing to train and supervise its police officers to prevent the use of excessive force, Defendant City acted with deliberate indifference to the clearly established rights secured to Mr. Watkins under the United States Constitution, specifically the Fourth Amendment rights to be free from unreasonable seizures and the use of excessive force against one's person.

75.     By engaging in acts of excessive force against Mr. Watkins that resulted in injuries to his person, Defendant Fox was acting pursuant to, and within the scope of, Defendant City's policies, practices and customs of failing to train and supervise Hammond Police Department officers.

76.     By failing to intervene to prevent acts of excessive force against Mr. Watkins that resulted in injuries to his person, Defendant Bystander Officers were acting pursuant to, and within the scope of, Defendant City's policies, practices and customs of failing to train and supervise Hammond Police Department officers.

77.     Defendant City's policies, practices and customs of failing to train and supervise Hammond Police Department officers were the moving force and the proximate and producing cause of Mr. Watkin's injuries.

78.     Due to the injuries suffered by Mr. Watkins, he is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial.  As a further result of Defendants' unlawful conduct, Mr. Watkins has incurred special damages, including expenses related to the disability caused by his injuries.  He may continue to incur other expenses and other special damages, in amounts to be established at trial.

79.     Mr. Watkins is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

80.     In depriving Mr. Watkins of his rights under the United States Constitution, Defendant City acted under color of law in its capacity as a municipal entity organized under the laws of Louisiana, and its actions and omissions were conducted within the scope of Defendant City's official duties.  This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 – Failure to Discipline**
**(As to Defendant City of Hammond)**

81.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

82.     At all times relevant to this action, Defendant City had policymaking authority with respect to the disciplinary practices of the Hammond Police Department.

83.     Defendant City and the Hammond Police Department have a *de facto* custom of failing to discipline police officers who use excessive force.

84.     Publicity regarding Hammond Police Department officers' use of excessive force while handcuffing[12] put Defendant City on actual or constructive notice of the constitutional violations resulting from its *de facto* custom of failing to discipline officers for using excessive force.

85.     In this case, Defendant City had such actual or constructive notice because Mr. Watkins filed a formal complaint describing Defendant Fox's use of excessive force against him.

86.     Defendant City failed to discipline Defendant Fox for use of excessive force against Mr. Watkins.

87.     Defendant City adopted official policies, practices and customs that provided for the failure to supervise and discipline Hammond Police Department officers when they use excessive force.  Defendant City accordingly acted with deliberate indifference to the clearly established rights secured to Mr. Watkins under the United States Constitution, specifically the Fourth Amendment rights to be free from unreasonable seizures and free from the use of excessive force against one's person.

88.     By engaging in acts of excessive force against Mr. Watkins that resulted in injuries to his person, Defendant Fox acted with impunity because of Defendant City's adoption of the aforementioned policies, practices and customs.

89.     These policies, practices and customs were the proximate and producing cause of Mr. Watkins' injuries.

90.     Due to the injuries suffered by Mr. Watkins, he is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial.  As a further result of the Defendants' unlawful conduct, Mr. Watkins has incurred special damages, including

---

[12] *See supra* note 3.

expenses related to the disability caused by his injuries.  He may continue to incur other expenses and other special damages, in amounts to be established at trial.

91.     Mr. Watkins is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

92.     In depriving Mr. Watkins of his rights under the United States Constitution, Defendant City acted under color of law in its capacity as a municipal entity organized under the laws of Louisiana, and its actions and omissions were conducted within the scope of Defendant City's official duties.  This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION
### Louisiana State Law Claims for Assault, Battery and Negligence
### (As to Defendants Fox and Bystander Officers)

93.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

94.     Plaintiff asserts violations of Louisiana state law by Defendants Fox and Bystander Officers under La. Rev. Stat. Ann. § 14:33, *et seq.* (battery), La. Rev. Stat. Ann. §14:36, *et seq.* (assault), La. Civ. Code Ann. art. 2315 (liability for acts causing damages), La. Civ. Code Ann. art. 2316 (negligence, imprudence or want of skill), and La. Code Crim. Proc. Ann. art. 220 (requiring the use of reasonable force in effecting a lawful arrest).

95.     The acts or omissions of these Defendants, as described herein, deprived Plaintiff of his rights under Louisiana state law and caused him the injuries and damages described in this Complaint.

**FIFTH CAUSE OF ACTION**
**Louisiana State Law Claim for Intentional Infliction of Emotional Distress**
**(As to Defendants Fox and Bystander Officers)**

96.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

97.     Plaintiff asserts violations of Louisiana law relative to intentional torts by Defendant Fox and Bystander Officers.

98.     Defendants acted intentionally, as described herein, to deprive Plaintiff of his rights under Louisiana state law and caused him the injuries and damages described in this Complaint.

99.     As a direct and proximate result of the intentional acts of Defendants Fox and Bystander Officers described herein Mr. Watkins has experienced emotional and psychological injuries—including mental anguish, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses.  Due to traumatic nature of the event and the injuries he suffered, Mr. Watkins has begun taking Venlafaxine, an anti-depressant that he had stopped taking several months before his arrest.

100.    Defendants Fox and Bystander Officers engaged in extreme and outrageous conduct, and acted maliciously and with specific intent to oppress and harm Mr. Watkins or with reckless disregard for the consequences of their actions and omissions.

**SIXTH CAUSE OF ACTION**
**Louisiana State Law Claims**
**(As to Defendant City of Hammond)**

101.    Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

102.    Plaintiff asserts violations of Louisiana law by Defendant City of Hammond under La. Civ. Code Ann. art. 2317 (acts of others); La. Civ. Code Ann. art. 2320 (acts of

servants); La. Rev. Stat. Ann. §14:33, et seq. (battery), La. Rev. Stat. Ann. § 14:36, et seq.

(assault), La. Civ. Code Ann. art. 2315 (liability for acts causing damages), La. Civ. Code Ann.

art. 2316 (negligence, imprudence or want of skill), La. Code Crim. Proc. Ann. art. 220

(requiring the use of reasonable force in effecting a lawful arrest).

103.    Accordingly, as a matter of Louisiana law, Defendant City of Hammond is

vicariously liable for all conduct of, or attributable to, Defendant Fox and Bystander Officers.

## JURY DEMAND

104.    Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure.

## PRAYER FOR RELIEF

105.    Plaintiff requests that the Court enter judgment in his favor and against each of

the Defendants and award the following relief:

A.      Declaration that Defendants' conduct violated the Fourth Amendment to

the United States Constitution;

B.      Compensatory and consequential damages, including damages for

physical injury, pain, mental and emotional distress, humiliation, loss of

enjoyment of life, and other pain and suffering on all claims allowed by law in an

amount to be determined at trial;

C.      Pecuniary and economic losses on all claims allowed by law in an amount

to be determined at trial;

D.      Punitive damages on all claims allowed by law in an amount to be

determined at trial;

E.       Attorneys' fees and costs associated with this action, including expert

witness fees, on all claims allowed by law;

24

F.     Pre- and post- judgment interest at the lawful rate; and

G.     Any other relief the Court deems just and proper.


Respectfully submitted,

Dated: _____


By: _____

Jayme Jonat (pro hac vice)
Robert Morrow (pro hac vice
motion forthcoming)
Matthew Gurgel (pro hac vice)
jjonat@hsgllp.com
rmorrow@hsgllp.com
mgurgel@hsgllp.com
Holwell Shuster & Goldberg LLP
425 Lexington Avenue
New York, NY 10017

and

Stephanie Willis
LA Bar Number 31834
Nora Ahmed (pro hac vice)
N.Y. Bar. No. 5092374
swillis@laaclu.org
mailto:nahmed@laaclu.org
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, LA 70156
Telephone: (504) 444-6046


*Attorneys for Plaintiff Timothy Watkins*

25